UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| STACY A. FONCANNON, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6: 16-039-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| SOUTHEASTERN EMERGENCY | ) | **MEMORANDUM OPINION** |
| PHYSICIANS, LLC, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

## I.

On February 17, 2015, Plaintiff Stacy Foncannon inadvertently dislodged her feeding tube ("g–tube") while at home. [Record No. 59–2, p. 8] Within fifteen minutes of the incident, she arrived at the emergency department of the Lake Cumberland Regional Hospital in Somerset, Kentucky. [Record No. 59–2, p. 7] There, she was treated by Dr. Sean Rogers and Erika Todd, a physician's assistant. Apparently the emergency department did not have an appropriate g-tube on hand. As a result, Rogers and Todd decided to replace the displaced tube with a Foley catheter. *Id.* at p. 3. After placement of the catheter, a CT scan was attempted at Rogers and/or Todd's direction. *See id.* at p. 4. However, Foncannon was in intense pain and instructed the CT technician not to go forward with the scan. *Id.* She was subsequently discharged with instructions to follow-up with her treating surgeon, Dr. Jorge Rodriguez, as soon as possible. *Id.* at p. 5.

Very early the next morning, the plaintiff's husband drove her to Louisville, Kentucky to see Dr. Rodriguez. [Record No. 59–2, p. 9] During an exploratory laparotomy, Dr.

Rodriguez confirmed that the plaintiff's small bowel was injured. [Record No. 54–2, p. 1] The plaintiff contends that the injury was caused by Rogers' and Todd's actions.

On February 11, 2016, the plaintiff filed suit against Lake Cumberland Regional Hospital ("Lake Cumberland") in state court, alleging that it was responsible for the negligence of its agents or employees. [Record No. 1–1] Lake Cumberland removed the matter to this Court based on diversity jurisdiction. On June 8, 2016, the plaintiff was granted leave to amend the Complaint, and Foncannon added Southeastern Emergency Physicians, LLC ("SEP") as a defendant, alleging that SEP had injured her through the negligence of its agents or employees. [Record No. 21] Shortly thereafter, Lake Cumberland filed a crossclaim for indemnity against SEP [Record No. 24] and a third-party claim for indemnity against Rogers and Todd. [Record No. 36]

The Court granted Lake Cumberland's unopposed motion for summary judgment in January 2017. [Record No. 67] The parties agreed that Lake Cumberland could not be liable for the alleged negligence of Rogers and Todd because they were not employees or agents of Lake Cumberland. The plaintiff acknowledged that she had repeatedly signed consent forms indicating her awareness that physicians and other clinicians were not hospital employees. [*See* Record No. 59–8] Lake Cumberland's indemnity claims against SEP, Todd, and Rogers were dismissed as moot.

SEP, the only remaining defendant, has now moved for summary judgment. [Record Nos. 66, 68] For the reasons that follow, summary judgment will be granted in its favor.

**II.**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is

no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The relevant inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

Once the moving party has met its burden of production, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Keeneland Ass'n, Inc. v. Earnes*, 830 F.Supp. 974, 984 (E.D. Ky. 1993) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). The nonmoving party cannot rely on the assertions in its pleadings; rather, it must come forward with probative evidence to support its claims. *Celotex*, 477 U.S. at 324. In making its determination on the motion for summary judgment, the Court will view all the facts and inferences from those facts in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587.

### III.

**A.     There is no genuine issue of material fact regarding vicarious liability.**

The plaintiff does not allege that SEP acted negligently. Instead, she asserts that it is liable for the actions of its "agents or employees"—namely, Sean Rogers and Erika Todd. [*See* Record No. 21] Conversely, SEP contends that Rogers and Todd were not its agents or employees and, therefore, SEP cannot be held liable for their alleged negligence. [Record No. 68]

The doctrine of *respondeat superior* imputes vicarious liability on the employer or principal for a tortious act of the employee or agent in certain situations. *Patterson v. Blair*, 172 S.W.3d 361, 369 (Ky. 2005). In support of its motion, SEP provided the affidavit of

Jennifer Daly, who is familiar with SEP's business operations. [Record No. 68–2] Daly attested that neither Rogers nor Todd was an employee of SEP during the relevant time period. *Id*. at p. 2. According to Daly, Rogers was SEP's independent contractor, while Todd was employed by "a wholly different company" -- Southeastern Emergency Services, PC ("SES"). *Id.* Daly stated that SEP had an agreement with SES whereby SES would provide clinicians, as independent contractors, to staff hospitals with which SEP had a staffing agreement.[1] *Id.* The defendant also provided a portion of the Medical Professional Independent Contractor Agreement between SEP and Sean Rogers, M.D.:[2]

> Professional's relationship to Company is that of an independent contractor and not an employee. Professional shall exercise Professional's independent professional medical judgment in the performance of Professional's Services and Company does not exercise any control or direction over the methods or manner by which Professional performs Services at Facilities. Professional is not entitled to participate in any employee benefit plans provided by the Company or Facilities for their employees. Professional is free to dispose of Professional's time during such times as Professional sees fit, including providing services at other healthcare facilities.

An independent contractor is traditionally defined as "a person who, in the pursuit of an independent business, undertakes to do a specific piece of work for other persons, using his own means and methods, without submitting himself to their control to all its details." *City of*

---

[1] It appears that SEP inadvertently failed to attach the contract between SES and SEP that was referenced in SEP's Memorandum in Support of Summary Judgment. Todd's employment contract with SES also does not appear to be included. While the Court does rely on these documents, as they were not provided, it notes that the plaintiff does not dispute the alleged content of the documents.

[2] The Independent Contractor Agreement between SEP and Sean Rogers is referred to throughout the SEP's Memorandum in Support of Summary Judgment as Exhibit 3. However, the document does not appear to be attached to the filing. But because the plaintiff has not objected to this excerpt as an accurate recitation of the Independent Contractor Agreement, the Court has considered the excerpt quoted herein.

*Winchester v. King*, 266 S.W.2d 343, 345 (Ky. 1954). Generally, an employer is not liable for the torts of an independent contractor in the performance of his or her job. *Miles Farm Supply v. Ellis*, 878 S.W.2d 803, 804 (Ky. Ct. App. 1994). Courts recognize that it would be an unfair application of the rule to hold the would-be employer liable for harm that it had no way of guarding against, and over which it had no control of the act or instrumentality that caused the injury. *See Bowen v. Gradison Constr. Co.*, 32 S.W.2d 1014 (1930). *See also King v. Shelby Rural Elec. Coop. Corp.*, 502 S.W.2d 659, 660 (1973).

Under Kentucky law, courts generally consider ten factors in determining whether a person is an employee rather than an independent contractor:

> (1) the extent of control which, by the agreement, the master may exercise over the details of the work; (2) whether or not the one employed is engaged in a distinct occupation or business; (3) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision; (4) the skill required in the particular occupation; (5) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work; (6) the length of time for which the person is employed; (7) the method of payment, whether by the time or by the job; (8) whether or not the work is a part of the regular business of the employer; (9) whether or not the parties believe they are creating the relationship of master and servant; and (10) whether the principal is or is not in business.

*Ky. Unemp. Ins. Comm'n v. Landmark Cmty. Newspapers of Ky., Inc.*, 91 S.W.3d 575, 580 (Ky. 2002) (citing Restatement (Second) of Agency, § 220 (1958)). *See also Sam Horne Motor & Implement Co. v. Gregg*, 279 S.W.2d 755, 756–57 (Ky. 1955). No one factor is determinative, and "each case must be decided on its own particular facts." *Ky. Unemp. Ins. Comm'n*, 91 S.W.3d at 580 (quoting *Locust Coal Co. v. Bennett*, 325 S.W.2d 322, 324 (1959)).

The relevant factors weigh in favor of concluding that Rogers and Todd were independent contractors. Daly attested that SEP does not employ physicians or advance

practice clinicians "with respect to healthcare provided by them," and that it does not "affect or control the care or treatment provided" by physicians or clinicians. [Record No. 68–2, p. 2] Rogers' Independent Contractor Agreement established that SEP would not exercise any control over the methods or manner in which Rogers practiced medicine. And since Todd worked for a different company, there is no suggestion that SEP had the ability to exercise control over the details of her work. Additionally, SEP did not have an office in Kentucky and, therefore, physical supervision or control of Rogers' and Todd's work was not feasible. *Id.* at p. 3.

Rogers and Todd, an emergency medicine physician and physician's assistant, respectively, were engaged in distinct occupations that required a high degree of skill. Practicing medicine is normally done by a specialist without supervision. While Ms. Todd would have been supervised by a physician in some instances, there is no indication that SEP, a company that does not provide medical care, supervised her work in any way. [*See* Daly Affidavit, Record No. 68–2, "[SEP] is not a medical group or professional corporation, does not provide medical care to patients, and is not licensed to and does not practice medicine in any state."]

There is no suggestion that SEP supplied the instrumentalities, tools, or the place of work for Rogers or Todd. Rather, Rogers and Todd performed their duties at Lake Cumberland's emergency department and elsewhere, and the plaintiff does not contend that SEP owned any of the supplies or equipment at those facilities. It does not appear that Rogers, Todd, and SEP believed they were creating a relationship of master and servant. Todd was employed by SES, which was not a subsidiary of SEP and had no employees who were also employees of SEP. [Record No. 68–2, p. 3] Rogers and SEP entered into an "independent

practice clinicians "with respect to healthcare provided by them," and that it does not "affect or control the care or treatment provided" by physicians or clinicians. [Record No. 68–2, p. 2] Rogers' Independent Contractor Agreement established that SEP would not exercise any control over the methods or manner in which Rogers practiced medicine. And since Todd worked for a different company, there is no suggestion that SEP had the ability to exercise control over the details of her work. Additionally, SEP did not have an office in Kentucky and, therefore, physical supervision or control of Rogers' and Todd's work was not feasible. *Id.* at p. 3.

Rogers and Todd, an emergency medicine physician and physician's assistant, respectively, were engaged in distinct occupations that required a high degree of skill. Practicing medicine is normally done by a specialist without supervision. While Ms. Todd would have been supervised by a physician in some instances, there is no indication that SEP, a company that does not provide medical care, supervised her work in any way. [*See* Daly Affidavit, Record No. 68–2, "[SEP] is not a medical group or professional corporation, does not provide medical care to patients, and is not licensed to and does not practice medicine in any state."]

There is no suggestion that SEP supplied the instrumentalities, tools, or the place of work for Rogers or Todd. Rather, Rogers and Todd performed their duties at Lake Cumberland's emergency department and elsewhere, and the plaintiff does not contend that SEP owned any of the supplies or equipment at those facilities. It does not appear that Rogers, Todd, and SEP believed they were creating a relationship of master and servant. Todd was employed by SES, which was not a subsidiary of SEP and had no employees who were also employees of SEP. [Record No. 68–2, p. 3] Rogers and SEP entered into an "independent

practice clinicians "with respect to healthcare provided by them," and that it does not "affect or control the care or treatment provided" by physicians or clinicians. [Record No. 68–2, p. 2] Rogers' Independent Contractor Agreement established that SEP would not exercise any control over the methods or manner in which Rogers practiced medicine. And since Todd worked for a different company, there is no suggestion that SEP had the ability to exercise control over the details of her work. Additionally, SEP did not have an office in Kentucky and, therefore, physical supervision or control of Rogers' and Todd's work was not feasible. *Id.* at p. 3.

Rogers and Todd, an emergency medicine physician and physician's assistant, respectively, were engaged in distinct occupations that required a high degree of skill. Practicing medicine is normally done by a specialist without supervision. While Ms. Todd would have been supervised by a physician in some instances, there is no indication that SEP, a company that does not provide medical care, supervised her work in any way. [*See* Daly Affidavit, Record No. 68–2, "[SEP] is not a medical group or professional corporation, does not provide medical care to patients, and is not licensed to and does not practice medicine in any state."]

There is no suggestion that SEP supplied the instrumentalities, tools, or the place of work for Rogers or Todd. Rather, Rogers and Todd performed their duties at Lake Cumberland's emergency department and elsewhere, and the plaintiff does not contend that SEP owned any of the supplies or equipment at those facilities. It does not appear that Rogers, Todd, and SEP believed they were creating a relationship of master and servant. Todd was employed by SES, which was not a subsidiary of SEP and had no employees who were also employees of SEP. [Record No. 68–2, p. 3] Rogers and SEP entered into an "independent

contractor agreement," which expressly disclaimed an employment relationship. Rogers was precluded from participating in any employee benefit plans and was free to dispose of his professional time as he saw fit, which included providing his services at other facilities. [Record No. 68–1, p. 7]

SEP's claim that medical care is not part of its business is less persuasive. While SEP does not provide medical services itself, it could not perform its business without the provision of medical services. *See Emergency Treatment, S.C. v. Dep't of Emp. Sec.*, 917 N.E.2d 135, 144 (Ill. Ct. App. 2009) (finding that physicians' services were integral part of staffing agency). Additionally, in her affidavit, Daly reported that SEP performs the billing for services rendered by its contract clinicians. While none of these factors are determinative, they weigh in favor of an employment or agent relationship. *See, e.g., Arrington v. Galen-Med, Inc.*, 838 So.2d 895, 898 (3d Cir. 2003) (hospital responsibility for billing was factor in determining that physician was hospital employee). The parties have not provided any information regarding the length of involvement between Rogers and SEP or Todd and SEP. Likewise, the record lacks information regarding how Rogers and Todd were paid.

Although some factors indicate an employee-employer relationship, at least with respect to Dr. Rogers, the majority of the factors indicate an independent contractor relationship. Importantly, Daly's affidavit and the excerpt of Rogers' independent contractor agreement indicate that SEP did not exert control over the details of the work. Both Rogers and Todd were highly skilled professionals, working in a setting that was physically separate and not owned or operated by SEP. Finally, there is no indication that SEP, Rogers, or Todd believed they were forming a master–servant relationship. Todd's exclusive employment with

another company is compelling evidence that, at most, she was an independent contractor supplied by SES.

The plaintiff has failed to articulate any response to SEP's argument that Rogers and Todd were independent contractors. Rather, she argues, in a three-page response, that SEP is liable for Rogers' and Todd's actions based on principles of ostensible agency. [Record No. 72]

"An apparent or ostensible agent is one whom the principal, either intentionally or by want of ordinary care, induces third persons to believe to be his agent, although he has not, either expressly or by implication, conferred authority on him." *Paintsville Hosp. Co. v. Rose*, 683 S.W.2d 255, 257 (Ky. 1985). The burden of proving agency rests upon the party asserting it, and he must prove both the agency and its extent. *Jobe v. Witten*, 204 S.W.2d 575, 577 (Ky. 1947).

Relying on *Paintsville Hospital*, 683 S.W.2d at 257, the plaintiff contends that SEP is subject to liability because it did not provide a consent form notifying her that Rogers and Todd were independent contractors. However, the holding of *Paintsville Hospital* and the Restatement (Second) of Agency § 267 (1958), which Kentucky has expressly adopted, require a showing that the principal induced a third party to rely on the care or skill of the apparent agent. Unlike a patient who reasonably assumes that her physician works for the hospital in which she is being treated, there is no suggestion that the plaintiff was aware of SEP's existence when Rogers and Todd rendered medical services on February 17, 2015. She did not add SEP as a defendant until approximately five months after the filing of her original Complaint. Further, she has not alleged any facts regarding a belief that Rogers and Todd were employees or agents of SEP at the time they provided medical care. Accordingly, the

plaintiff's attempt to draw a parallel between *Paintsville Hospital* and the instant matter is unavailing.

> **B.    Expert testimony is required for plaintiff's medical negligence claims.**

SEP has filed an alternative motion for summary judgment based on the plaintiff's lack of an expert witness.[3]  [Record No. 66]  On January 12, 2017, the Court granted Lake Cumberland's motion to exclude the expert testimony of the plaintiff's treating physician, Dr. Rodriguez, because his disclosure did not comply with Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure.  Pursuant to that Order, the Court held that Dr. Rodriguez's testimony would be limited to the scope of his treatment of the plaintiff.[4]  [Record No. 65]

As an initial matter, the plaintiff asks the Court to reconsider its decision limiting Dr. Rodriguez's testimony to matters related to the plaintiff's treatment.  However, as explained in the Court's prior ruling, Dr. Rodriguez's report did not comply with Rule 26.  He reported that the "staff at Lake Cumberland" deviated from the acceptable standard of care in their unsuccessful failure to re-insert the plaintiff's g-tube, and in their failure to confirm proper positioning. [Record No. 31–2]  However, Dr. Rodriguez did not identify the individuals he believed had treated the plaintiff and, accordingly, did not identify the applicable standard of care for an emergency physician and physician's assistant under the circumstances.  While Rodriguez generally stated that he relied on the plaintiff's medical records, he did not describe

---

[3] This motion was filed on January 12, 2017, before Lake Cumberland's third-party claims against Todd and Rogers were dismissed.  Accordingly, Todd and Rogers joined in the motion for summary judgment.

[4] The plaintiff's assertion that the ruling does not apply to SEP because Lake Cumberland filed the motion to exclude is not well taken.  The legal principles that warranted excluding Dr. Rodriguez's expert testimony apply to the entire case, and all parties are entitled to rely on the orders entered in this matter unless a particular order states otherwise.

the facts or data he considered in forming his opinion that the "staff" was negligent. [Record No. 31] *See Burke v. U-Haul Intern.*, No. 3: 03-cv-32, 2004 WL 5499520, at *2 (W.D. Ky. Dec. 7, 2004) (quoting *Reed v. Binder*, 165 F.R.D. 424, 430 n.11 (D.N.J. 1996)) ("Practitioners should no longer have to face what is referred to in state courts as a 'net opinion.' This is defined as an expert's bare conclusion, unsupported by factual evidence."). And although he might not have testified as an expert in any other cases during the past four years, he did not provide the required disclosure statement, or give a statement regarding compensation, as required by Fed. R. Civ. P. 26(a)(2)(B)(v-vi).

Pursuant to the original Scheduling Order, the plaintiff's expert discovery was due by July 25, 2016. [Record No. 11] The deadline was extended to September 23, 2016. [Record No. 40] Despite the additional time and the plaintiff's updated, "final disclosures" regarding expert testimony [Record No. 54], these deficiencies have not been cured. The plaintiff has not identified any reason for the Court to reconsider its decision limiting Dr. Rodriguez's testimony. In light of Rogers' and Todd's status as independent contractors, Foncannon's request for additional time to retain a new expert is futile and will be denied. Additionally, Dr. Rodriguez's report was facially deficient (e.g., it failed to identify the allegedly negligent actors), so its exclusion can hardly be deemed an unfair surprise to the plaintiff.

In the alternative, the plaintiff contends that her negligence claims may proceed to trial without an expert opinion, based on the doctrine of *res ipsa loquitur*. However, medical negligence must be established by expert testimony unless negligence and the injurious results are "so apparent that a layman with general knowledge would have no difficulty recognizing it." *Morris v. Hoffman*, 551 S.W.2d 8, 9 (Ky. Ct. App. 1977). Expert evidence ordinarily is

required to establish both causation and the applicable standard of care. *Id. See also Green v. Owensboro Med. Health Sys., Inc.*, 231 S.W.3d 781, 783–84 (Ky. Ct. App. 2007).

In *Green*, 231 S.W.3d 781, 782, the plaintiff underwent surgery by an orthopedist for a fractured finger. By all accounts, the finger surgery was successful, but when the plaintiff awoke from anesthesia, her top four front teeth were loose, misaligned, and bloody. *Id.* The trial court granted summary judgment in favor of the defendant because the plaintiff had not procured an expert opinion. The court of appeals affirmed, stating "we do not believe a layman, without medical expert testimony identifying the required standard of care and the breach thereof, could competently determine an anesthesiologist, surgeon, and/or health care facility did something wrong . . . ." *Id.* at 784.

Likewise, this is not a case in which the doctrine of *res ipsa loquitur* would be applicable. Clearly, it does not fall into the line of "common experience" *res ipsa* cases, such as when a "surgeon leaves a foreign object in the body." *See Andrew v. Begley*, 203 S.W.3d 165, 170 (Ky. Ct. App. 2006) (quoting *Perkins v. Hausladen*, 828 S.W.2d 652, 655 (Ky. 1992)). *Res ipsa* has also been applied when an otherwise qualified witness lays a sufficient foundation on more complex matters. *Id.* at 170–71. This typically occurs when a doctor "makes admissions of a technical character from which one could infer" negligence. *Id.* Neither of these exceptions to the rule requiring expert testimony applies here. Here, the factual murk is compounded by the fact that the plaintiff has underlying medical issues and her admission that she did not allow a CT scan to be performed. [Record No. 59–2, p. 4] *See Green*, 231 S.W.3d at 784 (medical negligence was even less obvious to the jury when the plaintiff admitted in her deposition that she suffered from multiple sclerosis and periodontal disease, possibly making her more prone to injury).

Without expert testimony identifying the required standard of care and the breach thereof, a jury would be unable to determine whether Rogers and Todd acted negligently in caring for the plaintiff.

**IV.**

Based on the foregoing analysis, it is hereby

**ORDERED** as follows:

1. Defendant Southeastern Emergency Physicians, LLC's motions for summary judgment [Record No. 66, 68] are **GRANTED**.

2. This action is **DISMISSED**, with prejudice, and **STRICKEN** from the Court's docket.

3. The pretrial conference and trial previously scheduled are **SET ASIDE** and **CANCELED**.

This 11th day of April, 2017.



Signed By:
*Danny C. Reeves* DCR
United States District Judge